IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **WILLIAM BURNETT,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**MUTUAL OF OMAHA MORTGAGE, INC.**, a Delaware corporation,<br><br>*Defendant.* | Case No. 7:26-cv-241<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff William Burnett ("Plaintiff Burnett" or "Burnett") brings this Class Action Complaint and Demand for Jury Trial against Defendant Mutual of Omaha Mortgage, Inc. ("Defendant" or "Mutual of Omaha Mortgage") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing telemarketing calls to consumers without consent. Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Burnett, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Burnett is a resident of Southport, North Carolina.

2. Defendant Mutual of Omaha Mortgage is a corporation registered in Delaware and headquartered in San Diego, California. Defendant Mutual of Omaha Mortgage conducts business throughout the US including in this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in April 2026 alone, at a rate of 140.2 million per day. www.robocallindex.com (last visited May 3, 2026).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Mutual of Omaha Mortgage, Inc. is a reverse mortgage lender that does business throughout the US.[3]

14. Mutual of Omaha Mortgage generates business by placing calls to consumers, as per Plaintiff's experience.

15. Mutual of Omaha Mortgage places calls using a pre-recorded voice message.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://mutualreverse.com/about-us/

16. Consumers have complained online and reported that they received pre-recorded voice message calls from Mutual of Omaha Mortgage, including:



[4]

17. Consumers have posted complaints online about unsolicited telemarketing calls that they have received from Mutual of Omaha Mortgage and its parent company Mutual of Omaha, including:

Mutual of Omaha Mortgage Better Business Bureau:

https://www.bbb.org/us/il/lombard/profile/mortgage-lenders/mutual-of-omaha-mortgage-0654-90027033/complaints




[4] https://callfilter.app/18006495344

**Initial Complaint** **Type:** Sales
**Date:** 12/16/2023 **Status:** Res

Multiple unsolicited cold calls selling reverse mortgage. I have never done business with Mutual of Omaha and don't intend to.

Mutual of Omaha Better Business Bureau:

https://www.bbb.org/us/ne/omaha/profile/insurance-companies/mutual-of-omaha-0714-104000434/complaints

**Initial Complaint** **Type:** Customer
**Date:** 04/05/2026 **Status:** Resolve

I receive 10 calls a day and night from MUTUAL OF OMAHA bots about a HELOC. The calls come from different phone numbers so blocking them does not help. It's harassing me. One of the recommendations I read about was to file a complaint to the BBB.
Thank you for any help you can provide.

**Initial Complaint** **Type:** Customer
**Date:** 02/26/2026 **Status:** Answere

Someone must have called in about purchasing insurance from Mutal of Omaha and gave them my telephone number and I have had 3 to 4 calls a day from them asking about my interest in purchasing insurance. I explained to them that I didn't call or inquire about information and take me off the calling list and they continue to call over and over again. I block the number but the continue to call from different numbers. I can honestly say because of this I would never recommend your product to anyone that was in need. PLEASE STOP CALLING ME.

**Initial Complaint** **Type:** Custome
**Date:** 01/18/2026 **Status:** Answe

I'm am receiving non stop calls and text messages from Mutual of Omaha. I have asked them to add me to their DNC list and calls and texts continue. I have NEVER contacted them about a quote or application, this is straight solicitation and harassment. I am filing a TCPA complaint as well.

18. In response to these calls, Plaintiff Burnett brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF BURNETT'S ALLEGATIONS

19. Plaintiff Burnett is the sole owner and user of his cell phone number ending in 1698.

20. In January of 2026, Plaintiff Burnett began receiving unsolicited calls to his cell phone that resulted in a pre-recorded voicemail soliciting a reverse mortgage.

21. Plaintiff Burnett received the following unsolicited calls from Mutual of Omaha Mortgage:

- January 22, 2026 at 9:50 AM from 817-286-4758;
- January 22, 2026 at 1:52 PM from 817-286-4375;
- January 22, 2026 at 5:53 PM from 940-276-2476;
- January 23, 2026 at 10:01 AM from 817-286-4375;
- January 23, 2026 at 6:04 PM from 940-276-2476;
- January 24, 2026 at 10:49 AM from 817-286-4377;
- January 24, 2026 at 2:53 PM from 817-286-4375;
- January 26, 2026 at 2:50 PM from 817-286-4758;
- January 26, 2026 at 6:51 PM from 817-286-4758;
- January 27, 2026 at 10:15 AM from 817-286-4375;
- January 27, 2026 at 2:25 PM from 817-286-4758;
- January 28, 2026 at 10:18 AM from 817-286-4758;
- January 29, 2026 at 2:21 PM from 817-286-4758;
- January 29, 2026 at 6:26 PM from 817-286-4377;
- January 30, 2026 at 10:21 AM from 817-286-4377;
- January 30, 2026 at 6:27 PM from 817-286-4377;
- January 31, 2026 at 10:22 AM from 940-276-2476;
- January 31, 2026 at 2:24 PM from 940-276-2476;
- February 2, 2026 at 10:24 AM from 817-286-4375;
- February 2, 2026 at 5:29 PM from 817-286-4375;
- February 3, 2026 at 10:27 AM from 817-286-4375;
- February 3, 2026 at 1:28 PM from 817-286-4375;
- February 3, 2026 at 4:30 PM from 940-276-2476;
- February 4, 2026 at 2:14 PM from 940-276-2476;
- February 4, 2026 at 5:16 PM from 940-276-2476;
- February 5, 2026 at 10:17 AM from 817-286-4375;
- February 5, 2026 at 2:21 PM from 817-286-4377;
- February 5, 2026 at 6:22 PM from 817-286-4377;
- February 6, 2026 at 10:14 AM from 817-286-4375;
- February 6, 2026 at 2:16 PM from 817-286-4377;
- February 6, 2026 at 6:16 PM from 817-286-4377;
- February 9, 2026 at 10:17 AM from 817-286-4758;

- February 9, 2026 at 6:36 PM from 817-286-4375;
- February 10, 2026 at 10:08 AM from 817-286-4377;
- February 10, 2026 at 6:11 PM from 817-286-4375;
- February 11, 2026 at 10:00 AM from 940-276-2476;
- February 11, 2026 at 2:01 PM from 817-286-4375;
- February 12, 2026 at 10:09 AM from 817-286-4758;
- February 12, 2026 at 6:11 PM from 940-276-2476;
- February 13, 2026 at 10:09 AM from 940-276-2476;
- February 13, 2026 at 2:10 PM from 817-286-4758;
- February 13, 2026 at 6:11 PM from 817-286-4758;
- February 17, 2026 at 10:39 AM from 817-286-4375;
- February 17, 2026 at 2:45 PM from 940-276-2476;
- February 17, 2026 at 6:50 PM from 817-286-4375;
- February 18, 2026 at 10:31 AM from 817-286-4377;
- February 18, 2026 at 2:53 PM from 817-286-4375;
- February 18, 2026 at 6:54 PM from 817-286-4375;
- February 19, 2026 at 6:36 PM from 817-286-4758;
- February 20, 2026 at 2:14 PM from 817-286-4758;
- February 20, 2026 at 6:15 PM from 817-286-4377;
- February 23, 2026 at 10:27 AM from 817-286-4375;
- February 23, 2026 at 2:29 PM from 940-276-2476;
- February 23, 2026 at 5:30 PM from 940-276-2476;
- February 24, 2026 at 10:25 AM from 940-276-2476;
- February 24, 2026 at 2:27 PM from 940-276-2476;
- February 24, 2026 at 6:29 PM from 817-286-4375;
- February 25, 2026 at 10:28 AM from 817-286-4377;
- February 25, 2026 at 6:34 PM from 940-276-2476;
- February 26, 2026 at 10:22 AM from 940-276-2476;
- February 26, 2026 at 2:24 PM from 817-286-4758;
- February 26, 2026 at 6:24 PM from 817-286-4758;
- February 27, 2026 at 10:26 AM from 817-286-4375;
- February 27, 2026 at 5:28 PM from 940-276-2476;
- February 28, 2026 at 10:19 AM from 817-286-4377;
- February 28, 2026 at 2:28 PM from 817-286-4375;
- March 2, 2026 at 10:25 AM from 817-286-4377;
- March 2, 2026 at 2:28 PM from 817-286-4375;
- March 2, 2026 at 5:30 PM from 817-286-4375;
- March 3, 2026 at 10:11 AM from 940-276-2476;
- March 3, 2026 at 2:18 PM from 866-872-9056;
- March 3, 2026 at 6:19 PM from 817-286-4375;
- March 4, 2026 at 10:03 AM from 940-276-2476;
- March 4, 2026 at 2:11 PM from 817-286-4375;
- March 4, 2026 at 6:12 PM from 817-286-4375;
- March 5, 2026 at 10:02 AM from 844-474-9003;

- March 6, 2026 at 10:03 AM from 940-276-2476;
- March 9, 2026 at 10:14 AM from 940-276-2476;
- March 9, 2026 at 6:20 PM from 817-286-4375;
- March 10, 2026 at 10:01 AM from 940-276-2476;
- March 10, 2026 at 2:03 PM from 817-286-4375;
- March 10, 2026 at 5:04 PM from 817-286-4375;
- March 11, 2026 at 9:55 AM from 817-310-9829;
- March 11, 2026 at 1:56 PM from 817-286-4375;
- March 12, 2026 at 9:51 AM from 940-468-4040;
- March 12, 2026 at 12:53 PM from 817-286-4375;
- March 12, 2026 at 3:55 PM from 817-286-4758;
- March 13, 2026 at 9:59AM from 817-286-4758;
- March 13, 2026 at 1:00 PM from 817-286-4377;
- March 13, 2026 at 5:02 PM from 940-276-2476;
- March 16, 2026 at 9:45 AM from 940-276-2476;
- March 16, 2026 at 12:47 PM from 682-235-7764;
- March 16, 2026 at 4:48 PM from 817-286-4375;
- March 17, 2026 at 10:50 AM from 734-724-5131;
- March 17, 2026 at 3:01 PM from 734-724-5131;
- March 17, 2026 at 5:45 PM from 817-286-4377;
- March 18, 2026 at 10:21 AM from 734-724-5131;
- March 18, 2026 at 2:40 PM from 734-724-5131;
- March 18, 2026 at 6:50 PM from 734-724-5131;
- March 19, 2026 at 10:30 AM from 734-724-5131;
- March 19, 2026 at 2:40 PM from 734-724-5131;
- March 19, 2026 at 6:50 PM from 734-724-5131;
- March 20, 2026 at 10:31 AM from 734-724-5131;
- March 23, 2026 at 2:20 PM from 734-724-5131;
- March 23, 2026 at 6:31 PM from 734-724-5131;
- March 24, 2026 at 12:41 PM from 734-724-5131;
- March 24, 2026 at 4:50 PM from 734-724-5131;
- March 25, 2026 at 12:01 PM from 734-724-5131;
- March 25, 2026 at 4:12 PM from 734-724-5131;
- March 26, 2026 at 12:41 PM from 734-724-5131;
- March 26, 2026 at 4:50 PM from 734-724-5131;
- March 27, 2026 at 1:21 PM from 734-724-5131;
- March 27, 2026 at 5:30 PM from 734-724-5131;
- March 28, 2026 at 12:20 PM from 734-724-5131;
- March 28, 2026 at 4:30 PM from 734-724-5131;
- March 29, 2026 at 1:01 PM from 734-724-5131;
- March 29, 2026 at 5:11 PM from 734-724-5131;
- March 30, 2026 at 1:11 PM from 734-724-5131;
- March 31, 2026 at 1:12 PM from 734-724-5131;
- March 31, 2026 at 5:21 PM from 734-724-5131;

- April 1, 2026 at 1:40 PM from 734-724-5131;
- April 1, 2026 at 5:50 PM from 734-724-5131;
- April 2, 2026 at 1:20 PM from 734-724-5131;
- April 2, 2026 at 5:30 PM from 734-724-5131;
- April 2, 2026 at 5:40 PM from 734-724-5131;
- April 3, 2026 at 1:20 PM from 734-724-5131;
- April 3, 2026 at 5:31 PM from 734-724-5131;
- April 6, 2026 at 2:11 PM from 734-724-5131;
- April 6, 2026 at 6:21 PM from 734-724-5131;
- April 7, 2026 at 2:11 PM from 734-724-5131;
- April 7, 2026 at 6:21 PM from 734-724-5131;
- April 8, 2026 at 2:21 PM from 734-724-5131;
- April 8, 2026 at 6:31 PM from 734-724-5131;
- April 9, 2026 at 3:01 PM from 734-724-5131; and
- April 9, 2026 at 7:11 PM from 734-724-5131.

22. In total, Plaintiff received over 130 unsolicited pre-recorded voicemails from Mutual of Omaha Mortgage to his cell phone between January 22, 2026 to April 9, 2026.

23. None of the aforementioned calls were answered, but for each, a voicemail was left from "Alex" soliciting a reverse mortgage from Mutual of Omaha Mortgage. For example:












24. Plaintiff Burnett could tell that the voicemails were pre-recorded because the unnatural pauses and the sound of the voice are obviously indicative of a pre-recorded message.

25. Plaintiff Burnett could easily recognize the voicemails as being pre-recorded because he received identical voicemails that featured the same voice, script, cadence, pauses, and emphasis multiple times.

26. For example, Plaintiff Burnett received multiple voicemails stating, "Hi, this is Alex with Mutual of Omaha Mortgage. I'm returning your request about reverse mortgage information. Please give me a call back at 800-649-5344. You can also let us know by phone if you don't want additional calls. Thank you."

27. In addition, some of the voicemails came through incomplete, indicative of a truncated prerecorded voicemail.







28. On January 23, 2026 at 10:01 AM, Plaintiff Burnett received a pre-recorded voicemail that repeats the same identical message twice, an error consistent with a dialer system that loops an audio file due a glitch or playback error in a pre-recorded message delivery system.




29. The voicemail that Plaintiff Burnett received on March 12, 2026 at 3:55 PM from 817-286-4758 features a message that features abnormal speech that also repeats itself unnaturally:



30. The pre-recorded voicemails that came through with the full message ask Plaintiff to call 800-649-5344.

31. When 800-649-5344 is dialed, it is answered by an IVR recorded agent using the name "Alex" from Mutual of Omaha Mortgage.[5]

32. Plaintiff Burnett has never knowingly or intentionally provided his cell phone number to Mutual of Omaha.

33. Plaintiff Burnett has not been looking to get reverse mortgage details, or any information regarding a mortgage.

34. The voicemails' reference to 'returning your request' or 'following up on your online inquiry' is scripted boilerplate language that Defendant uses regardless of whether any actual inquiry was made. Plaintiff Burnett never submitted any online form, request, or inquiry to Mutual of Omaha Mortgage or any third party related to reverse mortgages.

35. Plaintiff Burnett sent a letter to James Blackledge, the Chairman and CEO of Mutual of Omaha on February 5, 2026, complaining about the multiple pre-recorded calls he received to his cell phone, yet he continued to receive calls through April 9, 2026.

36. Plaintiff Burnett did not receive a response to this letter.

37. Plaintiff's attorneys had an employee send a demand for consent email to Mutual of Omaha on March 10, 2026. There was also no response to this letter.

38. The unauthorized solicitation calls that Plaintiff received from Defendant Mutual of Omaha Mortgage have harmed Plaintiff Burnett in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

---

[5] Based on a call Plaintiff made to 800-649-5344.

39. The voicemails also took up space on Plaintiff's cell phone, and Plaintiff felt harassed by the calls he received from Mutual of Omaha Mortgage.

40. Seeking redress for these injuries, Plaintiff Burnett, on behalf of himself and a Class of similarly situated individuals, brings this suit under the TCPA.

## CLASS ALLEGATIONS

41. Plaintiff Burnett brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **<u>Pre-recorded/Artificial Voice No Consent Class</u>:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

42. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Burnett anticipates the need to amend the Class definitions following appropriate discovery.

43. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

44. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed pre-recorded/artificial voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

45. **Adequate Representation**: Plaintiff Burnett will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Burnett has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Burnett and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Burnett nor his counsel have any interest adverse to the Class.

46. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Burnett. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it

would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Burnett and the Pre-Recorded/Artificial Voice No Consent Class)**

47. Plaintiff Burnett repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

48. The Defendant transmitted unwanted telephone calls to Plaintiff Burnett and the other members of the Pre-recorded/Artificial Voice No Consent Class using a pre-recorded voice message.

49. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded/Artificial Voice No Consent Class.

50. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded/Artificial Voice No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Burnett requests a jury trial.

**WILLIAM BURNETT**, individually and on behalf of all others similarly situated,

DATED this 5th day of June, 2026.

By: /s/ *Ryan Duffy*
The Law Office of Ryan P. Duffy, PLLC
96 E. Catawba Street, Suite 6
Belmont, NC 28012
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local Counsel for Plaintiff and the putative Class*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Class*

**Pro Hac Vice motion forthcoming*